

_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
January 08, 2026

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: 24-14610-gs |
| | Chapter 11 |
| TRACY LEE HURST-CASTL, | |
| | <u>Hearing Date</u> |
| Debtor(s). | DATE: November 3, 2025 |
| | TIME:  1:30 p.m. |

**MEMORANDUM DECISION (1) DENYING EX PARTE EMERGENCY MOTION FOR SHORT STAY OR ENLARGEMENT OF TIME TO FILE DISCLOSURE STATEMENT AND REORGANIZATION PLAN AND (2) DISMISSING CASE**

In 2007, the debtor, Tracy Lee Hurst-Castl, borrowed $2,857,500 from Washington Mutual Bank, FA and secured the loan with a deed of trust to encumber her real property at what is now known as 3910 White Fir Way, Mt. Charleston, NV 89124. The promissory note and deed of trust have since been transferred several times. Ms. Hurst-Castl candidly admits that she has not made any payment on that loan since 2008. She filed three chapter 11 bankruptcy cases between 2010 and 2012, each of which was dismissed. She then proceeded to unsuccessfully litigate challenges to the note in Nevada's state courts culminating in an adverse decision against her in *Castl v. Pennymac Holdings, LLC et al,* Case No. A-16-742267. The Nevada Supreme Court dismissed her appeal of that decision on May 13, 2022. Since 2023, Ms. Hurst-Castl has filed two additional chapter 11 cases. The court dismissed her 2023 subchapter V bankruptcy case in December 2023 pursuant to 11 U.S.C. § 1112(b)(4) based on its finding that there was a

1

substantial or continuing loss or diminution to the estate with no reasonable likelihood of reorganization.

Less than a year later, Ms. Hurst-Castl filed her current chapter 11. Ms. Hurst-Castl filed the bankruptcy on the first day of trial in a long-standing state court action brought by the Law Offices of Kristina Wildeveld (Wildeveld) against the debtor, and days before the scheduled foreclosure on the White Fir property. In neither the 2023 bankruptcy, nor this chapter 11, has Ms. Hurst-Castl sought to provide adequate protection or make any payments on the secured debt. Since the current bankruptcy filing, the court granted relief from stay to Long Term Capital Partnership VI, LLC (Long Term), the current entity holding the promissory note and entitled to foreclose on the deed of trust. Long Term foreclosed on its deed of trust in April 2025. Additionally, Wildeveld was allowed to liquidate its claims against the debtor in state court resulting in the entry of a default judgment against Ms. Hurst-Castl. Despite these events, Ms. Hurst-Castl continues to challenge the debts to Long Term and Wildeveld in this court and others.

The court previously entered an order to show cause why the bankruptcy case should not be dismissed for bad faith. In that order, the court detailed its concerns that the debtor was using the current bankruptcy to further her litigation efforts rather than reorganize. Ms. Hurst-Castl eventually filed a skeletal disclosure statement and plan. The disclosure statement is facially deficient, and the plan is unconfirmable. The court provided Ms. Hurst-Castl with a final opportunity to amend those documents to present a viable and confirmable plan. At the same time, the court also informed her that it would dismiss her bankruptcy case under 11 U.S.C. § 1112(b)(4)(J) if she failed to timely: (1) file an amended disclosure statement and plan; (2) obtain approval of the disclosure statement; and (3) confirm her plan of reorganization. Given its continuing concerns about bad faith, the court also continued the hearing on the order to show cause.

Ms. Hurst-Castl failed to file her amended disclosure statement and plan of reorganization by the latest deadline set forth in the court's current scheduling order. Instead, she

filed additional motions raising the same issues previously addressed or rejected by the court concerning the Long Term and Wildeveld claims. As she has done on multiple prior occasions, Ms. Hurst-Castl has filed various motions to vacate or continue the upcoming hearings as well. She now seeks an open-ended extension to file her amended disclosure statement and plan until after she concludes her pending litigation and appeals. On November 3, 2025, the court held a hearing on Ms. Hurst-Castl's most recent request to continue the deadlines to file her amended disclosure statement and plan, together with the continued hearing on the OSC.

The court has reviewed the docket in this case, as well as the 2023 subchapter V bankruptcy proceeding, the prior briefing on the motions and orders in both cases discussed below, together with the Debtor's Ex Parte Emergency Motion for Short Stay or Enlargement of Time to File Disclosure Statement and Reorganization Plan (Motion) (ECF No. 301) and supplement (ECF No. 302). For the reasons stated below, the court shall deny all requests for continuances of the existing deadlines and finds that cause exists to dismiss or convert the case under 11 U.S.C. § 1112(b) for bad faith and failure to file a viable disclosure statement and plan. The court further finds that dismissal of the bankruptcy case is in the best interests of the creditors and the estate, appointment of a trustee is not in the best interests of the estate, and there are no unusual circumstances which suggest that dismissal is not in the best interests of the estate.

## Facts

The court has entered multiple orders and decisions over the course of the debtor's past two bankruptcy cases. The following discussion is drawn from these prior decisions and the debtor's filings in this bankruptcy case, as well as her prior bankruptcy and her pending cases in the United States District Court for the District of Nevada. The court takes judicial notice of the docket and filings in those cases under Fed. R. Evid. 201(b).

### A. The prior subchapter V bankruptcy case.

The debtor, represented by counsel, filed a bankruptcy case under subchapter V of chapter 11 on February 4, 2023. Case No. 23-10410 (2023 Case). The debtor's counsel moved to

value the White Fir property to bifurcate the proof of claim filed by FCI Lender Services, Inc., as servicer for Long Term, into secured and unsecured claims. 2023 Case ECF Nos. 53 and 56. The debtor's motion estimated the total claim at the time of that filing at $2,531,820. FCI later filed a secured claim in the amount of $4,109,448.65. The motion originally valued the property at $937,743 and asked that the secured claim be limited to that amount with the remaining balance re-classified as a general unsecured debt. FCI opposed the motion but withdrew its opposition after the debtor submitted an appraisal valuing the property at $1,320,000. 2023 Case ECF No. 204. No order was ever submitted on the uncontested motion though counsel for FCI advised the court and parties that it no longer opposed valuation of its secured claim in the amount of the appraisal.

During this time, Wildeveld moved for relief from the automatic stay to continue its pending cases against the debtor in other courts to liquidate its claims arising from the law firm's prepetition representation of the debtor. Ms. Hurst-Castl opposed the motions. The bankruptcy court held that relief from stay was not necessary in one instance,[1] and continued the other motion pending resolution of concerns regarding the viability of the bankruptcy case.

The debtor's counsel then objected to Wildeveld's and FCI's proofs of claim. 2023 Case ECF Nos. 72, 90 and 91. Around this same time the debtor's counsel also filed a subchapter V plan. 2023 Case ECF No. 81. The plan stated that the debtor had no income, that the secured claim on the White Fir property would be treated as unsecured, and that she would obtain debtor in possession financing to pay administrative expenses. *Id.* FCI and the subchapter V trustee, among others, objected to the proposed plan focusing on viability due to a lack of income and inability to obtain financing.

While these matters were pending, the debtor's counsel moved to withdraw from representing the debtor. 2023 Case ECF No. 175. At roughly the same time, the subchapter V trustee moved to convert or dismiss the bankruptcy case on the basis that the debtor's plan was

---

[1] The bankruptcy court held that Wildeveld's pursuit of attorney's fees and contempt arising from the debtor's improper removal of a state court action was not subject to the automatic stay. 2023 Case ECF No. 86.

not feasible. 2023 Case ECF No. 197. The motion to dismiss noted that the debtor's operating reports reflected monthly income ranging between a negative $520.42 to a high of $277.07. *Id*. at 2. The trustee also noted that the debtor had still not moved to approve any debtor in possession financing as of the date of the motion to convert or dismiss, which was said to be the means for funding the plan of reorganization. Roughly three weeks later, Ms. Hurst-Castl, proceeding pro se, filed her motion for post-petition financing. 2023 Case ECF No. 207. The court authorized counsel to withdraw from representing the debtor shortly afterwards. 2023 Case ECF No. 213.

The court heard the pending matters on September 29, 2023, and October 5, 2023. The court denied the motion for post-petition financing (2023 Case ECF No. 250) and required Ms. Hurst-Castl to file an amended plan of reorganization by November 5, 2023. 2023 Case ECF No. 248. All other pending matters, including the Motion to Convert, were continued to November 6, 2023. In response, Ms. Hurst-Castl moved to reconsider the denial of the post-petition financing and filed her Amended Chapter 11 Small Business Plan. 2023 Case ECF Nos. 254 and 263. The court denied the motion to reconsider. 2023 Case ECF No. 266. At the November 6, 2023, hearing, the court stated its tentative decision that cause existed under § 1112(b)(4)(A) to dismiss or convert the case to chapter 7. However, the court requested additional statements as to whether dismissal or conversion was in the best interests of the creditors and the estate. 2023 Case ECF No. 277. On November 21, 2023, the court entered its oral ruling holding that cause existed under § 1112(b)(4)(J) to dismiss the bankruptcy case for substantial continuing loss or diminution of the estate and an absence of a reasonable likelihood of rehabilitation.

The bankruptcy court entered its order dismissing the case on December 12, 2023. 2023 Case ECF No. 292.

On January 17, 2024, the court also dismissed the pending adversary cases challenging the Wildeveld and Long Term claims in light of the dismissal of the underlying bankruptcy case. *See The Law Offices of Kristina Wildeveld & Associates v. Hurst-Castl,* Adv. Case No. 23-01089, Adv. ECF No. 77; *Hurst-Castl v. Long Term Capital Partnership VI, LLC, et al.,* Adv.

5

Case No. 23-01132, Adv. ECF No. 30. Ms. Hurst-Castl appealed both dismissals to the Ninth

Circuit Bankruptcy Appellate Panel (BAP). BAP Case Nos. 24-1014 and 24-1021.

**B. The current chapter 11 bankruptcy case.**

On September 3, 2024, Ms. Hurst-Castl filed her current chapter 11 bankruptcy. The

debtor filed the case on the first day of trial scheduled in *The Law Offices of Kristina Wildeveld*

*v. Hurst*, Case No. A-21-829963-C, pending in the Nevada state court since February 23, 2021.

ECF No. 30 at 16. Ms. Hurst-Castl was represented by counsel in the state court case but not in

the bankruptcy.

Because her current bankruptcy case was filed within a year of the dismissal of the 2023

case, Ms. Hurst-Castl timely filed a motion to extend the automatic stay. ECF No. 12. Wildeveld

opposed the motion. The court granted the motion and extended the stay as to all creditors except

Wildeveld, permitting it to proceed to trial on its state court claims but staying any effort to

collect any judgment apart from the bankruptcy process. ECF No. 42.

Less than a month after commencing the case, Ms. Hurst-Castl filed a motion to recuse

the undersigned as biased. ECF No. 27. Her motion further challenged the court's decisions

entered in the 2023 Case. After hearing argument, the court denied Ms. Hurst-Castl's motion to

recuse. ECF Nos. 46, 48.

**1.    The relief from stay motion and Ms. Hurst-Castl files her first District
        Court case.**

Ms. Hurst-Castl's current bankruptcy was filed roughly two weeks before Long Term's

scheduled nonjudicial foreclosure on the White Fir property. ECF No. 61 at 1. On November 15,

2024, Long Term moved for relief from the automatic stay to proceed with a pending nonjudicial

foreclosure and sought in rem relief under § 362(d)(4) to protect it from any future bankruptcy

filings. ECF No. 61. The debtor opposed the motion. The court scheduled a hearing on the

motion for Monday, December 16, 2024.

On Friday, December 13, 2024, three days before the hearing on Long Term's relief from

stay motion, Ms. Hurst-Castl commenced *Hurst-Castl v. Long Term Capital Partnership VI,*

*LLC, et al.,* Case No. 24-02334 (*Long Term* Case) in the United States District Court for the District of Nevada. The debtor asserted various claims and sought a cease-and-desist order against Long Term on the basis that it held no claim against the debtor.

 The bankruptcy court held the hearing on Long Term's motion for relief from stay on December 16, 2024, and scheduled its oral ruling for January 10, 2025. At the oral ruling, the court read its decision granting relief from stay. Additionally, the court granted Long Term's request for in rem relief under § 362(d)(4) based on its finding that Ms. Hurst-Castl had filed her current bankruptcy as part of a scheme to hinder, delay, or defraud Long Term that included multiple bankruptcy cases involving the White Fir property. At the conclusion of the oral ruling, the court directed Long Term to draft and lodge the order incorporating its oral ruling by reference and granting relief from stay and in rem relief. Pursuant to Nevada Local Bankruptcy Rule 9021(b), Ms. Hurst-Castl was given the opportunity to review the form of the order on Long Term's motion for relief from stay before it was submitted to the court.

On January 16, 2025, the bankruptcy court entered its Order Setting Case Status and Scheduling Conference to set a status and scheduling conference on January 30, 2025. ECF No. 87. The scheduling order directed the debtor to "be prepared to address deadlines to file her chapter 11 plan and disclosure statement." *Id.*

On January 21, 2025, Ms. Hurst-Castl filed her "Motion for Finding of Facts after the Judgment Under Fed.R.Civ.P. Rule 52(a); and Objection and Disapproval to the Order Drafted by Long Term Capital Partnership VI, LLC's Attorney on Behalf of Hon. Gary Spraker in Response to Long Term Capital Partnership VI, LLC's Motion for 'In Rem' Relief from the Automatic Stay." ECF No. 90. She argued that the court was required to make written findings of fact and conclusions of law under Fed. R. Civ. P. 52(a). After Long Term opposed the motion and Ms. Hurst-Castl filed her reply, the court entered its order denying the request for written findings. ECF No. 105. The court's order addressed the debtor's arguments and noted that Rule 52(a) specifically provided that "findings and conclusions may be stated on the record after the

7

close of evidence or may appear in an opinion or a memorandum of decision filed by the court." ECF No. 105 at 2.

The court entered its order granting Long Term's motion for relief from stay and in rem relief on January 31, 2025. ECF No. 104. Long Term scheduled its non-judicial foreclosure for April 4, 2025.[2]

The court held its status and scheduling conference on January 30, 2025. The court discussed the need for the debtor to draft and file a disclosure statement and plan of reorganization. The next day, it entered its Order Setting Deadline to File Chapter 11 Plan and Disclosure Statement requiring the debtor to file her chapter 11 plan and disclosure statement by March 17, 2025. ECF No. 109.

On February 3, 2025, Ms. Hurst-Castl filed her objection to Long Term's proof of claim and set the objection for a hearing on March 10, 2025. ECF No. 114. Unlike the claim objection raised in her 2023 bankruptcy which focused on a statute of limitations defense, the debtor now also asserted a litany of arguments that she did not owe Long Term any debt. Specifically, Ms. Hurst-Castl argued that Long Term could not establish that it was the holder of the original Washington Mutual promissory note entitled to enforce that debt and there was no evidence that Washington Mutual had assigned the deed of trust to Long Term. Long Term opposed the claim objection (ECF No. 124), and Ms. Hurst-Castl filed a reply to which she attached the Declaration of Private Investigator William J. Paatalo.[3] ECF No. 128.

On February 11, 2025, Ms. Hurst-Castl filed her Emergency Ex Parte Motion to Vacate Order for Lack of Subject Matter Jurisdiction. ECF No. 117. The motion challenged the court

---

[2] ECF Nos. 186 at 6; 186-1 at 21; and 186-2 at 2.

[3] Mr. Paatalo's declaration is dated April 6, 2020, and was prepared for Ms. Hurst-Castl's state court action in *Castl v. Pennymac Holdings, LLC,* Case No. A-16-742267-C, in which she similarly challenged the secured creditor's debt and deed of trust. The trial court did not consider Mr. Paatalo's declaration because it was never presented. ECF No. 128 at 12. Indeed, the state court's December 4, 2020, decision makes no reference to the Paatalo declaration. ECF No. 63-9. That decision, however, held that: "The trial testimony confirmed that PennyMac currently holds the Note and is the beneficiary of record of the Deed of Trust, which is consistent with the public record." *Id.* at 6. This finding contravenes Mr. Paatalo's declaration.

order granting relief from stay and argued that the court lacked jurisdiction because it did not determine Long Term's standing and the foreclosure action was a state matter beyond the court's authority. The motion asked that the court declare its prior order void, reinstate the automatic stay, and issue written findings of fact and conclusions of law. Long Term opposed the motion.

On February 12, 2025, Long Term moved to dismiss Ms. Hurst-Castl's claims in the *Long Term* Case in District Court. *Long Term* Case ECF No. 12. The debtor then amended her complaint twice (*Long Term* Case ECF Nos. 20, 22) before Long Term filed another motion to dismiss. *Long Term* Case ECF No. 25.

On February 14, 2025, the bankruptcy court denied Ms. Hurst-Castl's motion to vacate its stay relief order. ECF No. 120. In its order, the court specifically addressed Ms. Hurst-Castl's challenge to the court's subject matter jurisdiction to hear and decide the relief from stay motion.

Also on February 14, 2025, Ms. Hurst-Castl filed her "Motion for Reconsideration of Court's Order Granting Long Term Capital Partnership VI, LLC's In Rem Relief from the Automatic Stay Due to Lack of Subject Matter Jurisdiction and Debtor's Objection to FCI Lender Services, Inc DBA Servicer for Long Term Capital Partnership VI, LLC's Proof of Claim No. 6." ECF No. 119. This motion again challenged the court's failure to enter written findings of fact and conclusions of law and asserted that the court lacked subject matter jurisdiction. The motion further took issue with various prior orders entered in the current bankruptcy and the 2023 bankruptcy case. Finally, it also contained an objection to Long Term's proof of claim. However, the motion only sought to vacate the order for relief from stay, reinstate the automatic stay, and stay Long Term's foreclosure pending a resolution of Long Term's proof of claim. The court denied the debtor's motion for reconsideration observing that she had previously raised, and the court had previously decided, the arguments presented for reconsideration. ECF No. 125.

On March 4, 2025, the debtor filed her Notice of Appeal as to the relief from stay order and subsequent orders relating to the relief from stay. ECF No. 129. The next day, the debtor filed an emergency motion to stay the relief from stay order. ECF No 131. The bankruptcy court denied the motion to stay. ECF No. 139.

9

### 2. The objection to Long Term's proof of claim.

The court heard the debtor's objection to Long Term's proof of claim on March 10, 2025. At the conclusion of the hearing, the court scheduled an oral ruling on the claim objection for April 1, 2025.

On March 14, 2025, Ms. Hurst-Castl filed another emergency motion to stay all pending matters in the bankruptcy case in light of her pending appeals in the BAP. ECF No. 143. The court denied this motion as well.

On March 17, 2025, the last day for the debtor to file her disclosure statement and plan in the current bankruptcy case, the debtor filed her first motion for extension of time to file the documents. In light of the pending matters in the bankruptcy court and on appeal, the debtor asked that she be given until May 17, 2025, or 30 days from a decision on her then pending bankruptcy appeals, to file her disclosure statement and plan. ECF No. 144.

On March 20, 2025, Ms. Hurst-Castl filed an emergency motion in her BAP appeal of the dismissal of her adversary actions against Wildeveld and Long Term filed in the 2023 bankruptcy case. BAP Case No. 24-1014 ECF No. 29. The motion sought to stay all state and federal court proceedings in her cases, including the bankruptcy court's oral ruling on her objection to Long Term's claim and the pending nonjudicial foreclosure.

On March 25, 2025, Ms. Hurst-Castl also moved the District Court in the *Long Term* Case for a preliminary injunction to enjoin the secured creditor from proceeding with its nonjudicial foreclosure. *Long Term* Case ECF No. 35. The injunction motion further sought to stop the bankruptcy court's oral ruling on her objection to Long Term's proof of claim scheduled for April 1, 2025, and to halt enforcement of the deadlines to file a plan and disclosure statement pending the outcome of her litigation. *Id.* The debtor cited her "medical and cognitive disabilities" in support of her request for the injunction. *Id.* at 6. That same day the District Court entered a minute order declining to hear the debtor's motion for injunctive relief on an emergency basis. The next day Ms. Hurst-Castl filed a motion for an ex parte temporary restraining order. *Long Term* Case ECF No. 40. On March 27, 2025, the District Court declined

10

to consider the requirements for the temporary restraining order on an emergency basis. *Long Term* Case ECF No. 41. In short, the District Court in the *Long Term* Case did not enjoin the scheduled foreclosure or the bankruptcy court's oral ruling on the objection to Long Term's proof of claim.

On March 28, 2025, Ms. Hurst-Castl moved in the bankruptcy court to stay the oral ruling on her objection to Long Term's secured claim. ECF No. 155. Again, Ms. Hurst-Castl asked to stay the ruling until after decisions were entered on her bankruptcy appeals. Again, the court denied the request for a stay pending her appeals. ECF No. 156.

On April 1, 2025, the court entered its oral ruling overruling the debtor's objection to Long Term's proof of claim. ECF No. 162. The bankruptcy court traced the assignments of the deed of trust, as well as Ms. Hurst-Castl's unsuccessful challenges to Long Term's predecessors in interest litigated in the Nevada state courts, concluding with the Nevada Supreme Court's dismissal of the debtor's appeal in *Castl v. PennyMac Holdings, LLC*, Case No. 82296 (Nev. Sup. Ct) on May 13, 2022.[4] The court held that Long Term was the current entity entitled to enforce the note and deed of trust against the White Fir property.

Also on April 1, 2025, the BAP denied Ms. Hurst-Castl's request to stay all proceedings, including the pending foreclosure. BAP Case No. 24-1014 ECF No. 31.

Pursuant to the order granting relief from stay, and no stay of proceedings having been issued by the bankruptcy court, the District Court, or the BAP, Long Term conducted its non-judicial trustee sale of the White Fir property on April 4, 2025. ECF No. 186 at 6.

On April 7, 2025, Ms. Hurst-Castl filed an emergency motion in the *Long Term* Case asking the District Court to void the foreclosure sale. *Long Term* Case ECF No. 53. The court declined to hear the motion to void the foreclosure sale on an emergency basis. *Long Term* Case ECF No. 58.

The bankruptcy court entered its order denying Ms. Hurst-Castl's objection to Long Term's proof of claim on April 9, 2025. ECF No. 162.

---

[4] *See* ECF No. 63-10.

On April 18, 2025, the BAP dismissed Ms. Hurst-Castl's appeal of the adversary case dismissals involving the Wildeveld and Long Term claims arising in the 2023 Bankruptcy. The BAP concluded that those appeals were moot in light of the current chapter 11 bankruptcy and the proceedings involving both creditors. Ms. Hurst- Castl appealed the BAP's decision to the United States Court of Appeals for the Ninth Circuit where it remains pending. *See* ECF No. 317 at 2 (referencing appeal from the dismissal of the Wildeveld adversary proceeding to the Ninth Circuit).

### 3. Ms. Hurst-Castl challenges Long Term's foreclosure.

Also on April 18, 2025, Ms. Hurst-Castl filed *Hurst-Castl v. Sables, LLC, et al.,* Case No. 25-917194, in the Eighth Judicial District Court, Clark County, Nevada, alleging a wrongful foreclosure of the White Fir property and seeking to quiet title, among other claims. The state court entered a temporary restraining order prohibiting defendant Sables, LLC from taking various actions on the White Fir property after the nonjudicial foreclosure sale. The debtor identified Sables as the "purported" trustee for Long Term that conducted the nonjudicial foreclosure. *Sables* ECF No. 1-1 at 4.

On April 23, 2025, after the nonjudicial foreclosure occurred, the bankruptcy court held its hearing on the debtor's motion to extend the deadline to file her disclosure statement and plan. Given the number of matters pending, the court further extended the time for the debtor to file her disclosure statement and plan until June 20, 2025, to assess her situation after the foreclosure. ECF No. 166.

On April 29, 2025, Sables removed the state court case to the United States District Court for the District of Nevada, Case No. 25-00752. The District Court declined the debtor's request to remand the case to state court. *Sables* ECF No. 26. It also denied the debtor's motion to extend the state court TRO, finding that it had expired and she failed to demonstrate the elements for a preliminary injunction. *Sables* ECF No. 42.

**4.  The Wildeveld state court case and other ongoing matters.**

After commencement of the current bankruptcy the state court rescheduled trial of
Wildeveld's claims against Ms. Hurst-Castl to start on April 30, 2025. ECF No. 179-13. Though
the debtor and her counsel appeared on the first day of trial, counsel sought to withdraw. The
court originally denied the motion to withdraw but the debtor elected to proceed without counsel.
After the court excused counsel, the debtor refused to participate in the trial. The court then
treated the matter as a default judgment proceeding based on the debtor's refusal to participate.
The court took evidence from Wildeveld and found that the default judgment had been proven.
The court directed Wildeveld to prepare the order. The debtor then unsuccessfully moved to
recuse the state court judge on two occasions and challenged the court's order setting the hearing
on her motion to vacate the default judgment. These actions delayed entry of the default
judgment liquidating the Wildeveld claims. ECF Nos. 179-14; 179-15; 179-18.

Also on April 30, 2025, the District Court in the *Long Term* Case dismissed the debtor's
complaint holding that the debtor's challenges to the secured creditor's claim were barred by the
doctrine of res judicata. *Hurst-Castl v. Long Term Capital P'Ship VI, LLC*, 2025 WL 1266736
(D. Nev. Apr. 30, 2025). The District Court also denied all claims for injunctive relief. *Id.* The
debtor moved for reconsideration of the District Court's decision and to stay the judgment. *Long
Term* Case ECF Nos. 71 and 72; *see also* ECF No. 78. She also filed motions to compel
production of evidence to prove Long Term's standing to proceed with the foreclosure and to
vacate the prior order for lack of subject matter jurisdiction, standing, fraud upon the court, and
newly discovered evidence. *Long Term* Case ECF Nos. 79 and 81.

Defendant Sables moved to dismiss with prejudice the complaint filed in the *Sables* Case
on May 19, 2025.

While the debtor challenged the entry of default judgment in the state court litigation on
Wildeveld's claim, she objected to Wildeveld's proof of claim on June 5, 2025. ECF No. 169.

On June 13, 2025, the debtor filed her renewed objection to Long Term's proof of claim
in the bankruptcy court. ECF Nos. 186 and 195 (supplement). The renewed objection largely

ignores the court's prior ruling on the proof of claim, though it did raise the effect of the foreclosure on Long Term's pending proof of claim. The debtor scheduled a hearing on her renewed motion for July 15, 2025.

On June 16, 2025, the bankruptcy court held a status conference on the objection to Wildeveld's claim and advised the parties that it would hold the claim objection in abeyance pending entry of the default judgment or other conclusion of the case in the state courts. ECF No. 193.

On June 20, 2025, the date her disclosure statement and plan were due in the bankruptcy case under the extended deadline, the debtor moved for another extension of time to file those documents. ECF No. 192. Again, she raised her medical condition and sought another 45-60 days to "complete amended schedules, resolve classification issues stemming from newly filed claims, and prepare a confirmable plan with the assistance of accounting support." *Id.*

On June 25, 2025, the debtor moved to reset all deadlines in the *Sables* case due, in part, to her "documented medical and cognitive impairments." *Sables* Case ECF No. 33 at 2. The court granted the motion and reset existing deadlines on June 30, 2025. *Sables* Case ECF No. 35. That same day, the debtor filed her Motion to Vacate Void Order for Lack of Standing, Subject Matter Jurisdiction, Jurisdiction and Fraud on the Court or in the Alternative Remand the Case to State Court in the *Sables* Case. *Sables* Case ECF No. 37. This motion also challenged Long Term's nonjudicial foreclosure. The debtor made the same arguments she previously raised in her objection to Long Term's claim in the bankruptcy court and addressed in the oral ruling.[5]

On July 2, 2025, Sables moved to declare the debtor a vexatious litigant in the *Sables* Case. *Sables* Case ECF No. 39. Sables also moved to stay all discovery pending a ruling on the motion to dismiss. That motion was granted by Magistrate Judge Nancy J. Koppe. *Sables* Case ECF No. 69.

_____

[5] The debtor had previously raised similar arguments in her motion to vacate filed in the *Long Term* Case.

On July 7, 2025, the Nevada state court entered its default judgment against Ms. Hurst-Castl in the amount of $89,513.98, for damages, late fees, interest, and costs. Proof of Claim No. 5-2. The default judgment contains a detailed account of the events before the state court resulting in the decision. The debtor appealed the default judgment to the Nevada Supreme Court. *See* ECF No. 317 at 2 (listing appeal to Nevada Supreme Court).

### 5.  The plan process.

Also on July 7, 2025, this court entered its Order Setting Hearing On Debtor's Second Motion for Extension of Time, and Directing Debtor to Show Cause Why This Case Should Not Be Dismissed or Converted (OSC). ECF No. 197. The court scheduled a hearing on the second motion for extension of time for August 28, 2025, but also required the debtor to show cause why the case should not be dismissed as a bad faith filing. The OSC detailed the court's concern that the debtor was using the bankruptcy process to further her litigation efforts and noted the nonjudicial foreclosure and the pending cases in District Court continuing to challenge the foreclosure, as well as her actions in the Wildeveld state court litigation. Given her stated income, the court also explained why it was concerned that she lacked an ability to reorganize.

On July 8, 2025, Wildeveld amended its proof of claim based on the amounts awarded in the default judgment and attached a copy of the Default Judgment to the amended claim.

On July 14, 2025, Ms. Hurst-Castl moved in the *Sables* Case to compel production of evidence of standing, request for limited evidentiary hearing, and motion to stay briefing deadlines on pending motions. *Sables* Case ECF No. 51. The motion was directed at challenging whether Sables was a real party in interest with enforceable rights under the promissory note and deed of trust. *Id*. at 4.

That same day, the debtor also moved to continue the hearing scheduled for the next day in the bankruptcy court on her renewed objection to Long Term's proof of claim. ECF No. 204. The court denied the motion. ECF No. 205. Also on July 14, 2025, the debtor filed her Notice of Intent to Offer Testimony in Support of Debtor's Renewed Objection to Proof of Claim No. 8. ECF No. 202. On the day of the hearing, she filed a supplement to her notice of intent to offer

testimony.[6] ECF No. 206. The court held the hearing on July 15, 2025, but continued the matter to permit the parties to provide further briefing. The court stated that the renewed objection would be taken under submission on August 7, 2025, after the deadline for the debtor's supplemental reply. ECF No. 207.

On July 18, 2025, the debtor filed a second motion to vacate and void the dismissal of her complaint in the *Long Term* Case. *Long Term* Case ECF No. 81.

On August 7, 2025, the District Court entered an order instructing the debtor not to file any further documents in the *Sables* Case until the motions to dismiss and for a determination of vexatious litigation were decided. *Sables* Case ECF No. 66. That court further ordered that Sables did not need to respond to any further filings pending entry of the court's decision or separate court order. *Id.*

On August 20, 2025, the bankruptcy court entered its Order Denying Renewed Objection to Proof of Claim No. 8-1. ECF No. 231.

On August 27, 2025, the day before the hearing on the motion to extend the plan deadlines and OSC, the debtor filed her "preliminary" disclosure statement and plan. The debtor stated the plan "is preliminary because multiple claim objections and appeals remain unresolved, which directly affect claim treatment." ECF No. 245 at 1. Ms. Hurst-Castl reserved her right to amend the plan "once those matters are adjudicated." *Id.*

The disclosure statement focused on the debtor's claim objections, including those to Long Term's and Wildeveld's claims. Ms. Hurst-Castl failed to acknowledge, much less discuss, the adverse rulings against her on the claim objections. Similarly, the disclosure statement

---

[6] The testimony Ms. Hurst-Castl sought to submit in support of the renewed objection to Long Term's proof of claim was that of Joseph Esquivel and William McCaffrey, whom she describes as a "certified and licensed investigator" and a "loan data researcher," respectively. ECF No. 202 at 2. In his affidavit, Mr. Esquivel revealed that he is a private investigator who conducted a "Chain of Title Analysis & Mortgage Fraud Investigation" for Ms. Hurst-Castl. ECF No. 201 at ¶¶ 2, 4. Mr. Paatalo, whose declaration Ms. Hurst-Castl attached to her reply filed in support of her original claim objection, was also a private investigator and also conducted a chain of title analysis for Ms. Hurst-Castl. ECF No. 128 at ¶¶ 1, 10. It is apparent that at the time she filed her *original* objection to Long Term's proof of claim, Ms. Hurst-Castl was well aware of the issue and knew of the availability of such investigative services.

identified the White Fir property as the debtor's property despite Long Term's foreclosure. Indeed, the documents failed to even mention the foreclosure. The disclosure statement also failed to mention the debtor's current income, the sources of any income, or provide any projections as to the claims against the estate and any payments. ECF No. 244. The disclosure statement failed to provide or discuss the debtor's liquidation analysis. *Id.*

The plan attempted to retain the debtor's equity in the White Fir property despite the foreclosure. It proposed that the debtor would retain the White Fir property "subject to valid liens and final claim adjudication," but did not recognize any secured claim. ECF No. 245 at 2. It further provided that no distributions would be made to secured creditors "until final adjudication" and then "claims will be restructured over the Plan term under § 1129(b)(2)(A)." *Id.* Yet, the plan never mentions what the term of the plan might be. Unsecured claims would receive an undefined distribution after all secured and priority claims were paid at some undefined time in the future. The plan failed to provide any schedule for projected payments.

At the August 28 hearing on the motion to extend and show cause, the court acknowledged that the debtor had filed a disclosure statement and plan. The court attempted to explain why both documents were deficient and needed to be amended. The court then addressed the order to show cause. It reiterated that the debtor's course of action demonstrated an intent to engage in repeated litigation in the hope of obtaining a favorable result in differing courts in the face of contrary prior decisions. The court ultimately stated that it was inclined to give the debtor a last chance to present a meaningful disclosure statement that could proceed towards approval together with a realistic plan that could then proceed towards confirmation. The court continued the hearing to September 12, 2025, to allow the parties to confer as to the path forward.

The day after the hearing, Long Term filed its amended claim in the amount of $3,911,000.63 as a general unsecured claim. The amended claim represents Long Term's statement of its remaining deficiency on the loan after the nonjudicial foreclosure.

During the August 28 hearing the court also denied the debtor's Motion to Compel Production of Evidence of Standing and Request for Limited Evidentiary Hearing Under FRBP

17

9014(e) and 11 U.S.C. § 502(b). ECF No. 256. The court observed that the debtor's motion again sought to relitigate matters addressed in the court's April 1, 2025, oral ruling denying the debtor's objection to Long Term's proof of claim. The court further explained that the debtor had failed to appeal the court's denial of the debtor's objection to Long Term's claim, which constituted a final order. As such, Long Term's secured claim was not subject to her continued collateral attacks.

As a result of that hearing, the court also entered its order on Ms. Hurst-Castl's objection to Wildeveld's claim. ECF No. 260. At the hearing, the court acknowledged the ongoing state court hearings to liquidate Wildeveld's claims. It further stated that the debtor could not now relitigate those matters in bankruptcy court. The court raised its concern that the debtor was forum shopping after she elected to discharge her counsel in the state court litigation on the day trial was to begin and then chose not to participate in that trial resulting in entry of the current default judgment. In light of those proceedings, the bankruptcy court concluded that the debtor's claim objection would be held in abeyance pending the conclusion of the state court proceedings.

Despite the court's rulings, and the impending deadline to file her amended disclosure statement and plan, the debtor proceeded to file another round of objections to both Long Term's and Wildeveld's amended claims. On September 11, 2025, the debtor filed multiple documents again directed toward Long Term's secured claim and foreclosure as well as the Wildeveld default judgment. First, she filed a Rule 60(b) motion to set aside the court's prior denial of her objection to Long Term's Proof of Claim No. 8-1, once again arguing that the court's denial of her claim objection was void for lack of subject matter jurisdiction while also stating that she had recently obtained a new affidavit of securitized loans, and raising ADA violations and her pending appeals. ECF No. 269. That same day, the debtor also filed a claim objection to Long Term's amended proof of claim stating the unsecured deficiency claim. ECF No. 273. Again, the objection challenged the claim as defective and fraudulent, raising the same questions of standing, assignment of interests and other arguments that were, or should have been, raised in her original objection. The objection to Long Term's amended claim raised for the first time in

18

bankruptcy court that after the foreclosure the Clark County District Court had entered a temporary restraining order in the case Ms. Hurst-Castl brought against Sables. As noted above, that case was subsequently removed to the District Court where a motion to dismiss the same claims was pending at that time. Moreover, the debtor failed to disclose that the District Court had held that the TRO expired, or that it had denied her request for a preliminary injunction. *See Hurst-Castl v. Sables*, 2025 WL 1837230, at \*1 (D. Nev. July 3, 2025).

Ms. Hurst-Castl also objected to the amended Wildeveld claim. ECF No. 276. Her latest objection contains numerous arguments attacking the state court judgment, including an argument that the state court proceeding violated the automatic stay despite the court's order declining to extend the stay to that litigation – a ruling that the debtor appealed and is now final as well. *Id.*

The court entered its current scheduling order on September 15, 2025, requiring the debtor to file her amended plan and disclosure statement by October 14, 2025. ECF No. 281. Consistent with its discussions with the debtor and parties in interest at the August 28 hearing on the order to show cause, the court stated:

> The debtor's failure to file an amended disclosure statement containing adequate information as that term is defined under 11 U.S.C. § 1125(a)(1) and an amended chapter 11 plan which conforms to the requirements of 11 U.S.C. § 1123 and is confirmable under 11 U.S.C. § 1129 will result in the dismissal of the debtor's case under 11 U.S.C. § 1112(b)(4)(J) for failure to file an appropriate disclosure statement or confirmable plan and/or bad faith as discussed in the court's OSC, without further notice or hearing.

*Id.* at 2. The court continued the hearing on the OSC to October 31, 2025, if the debtor timely filed her amended disclosure statement and plan.

### 6. Ms. Hurst-Castl fails to file an amended disclosure statement and plan.

On September 29, 2025, the debtor filed a motion to vacate the scheduling order based on her objection that the Wildeveld and Long Term claims were unenforceable. ECF No. 288. The court denied the motion on October 2, 2025. ECF No. 293.

On October 14, 2025, the debtor filed another motion for an extension of time to file her amended disclosure statement and plan. ECF No. 301. The debtor sought a short stay or an extension of time to file the required documents. The debtor states that this current extension is required "due to unexpected medical symptoms connected to prior cranial surgeries and the extraordinary burden of simultaneously defending multiple active matters in Bankruptcy Court, Federal District Court, Nevada District Court, Justice Court and two pending appeals before the Bankruptcy Appellate Panel…." ECF No. 301 at 2. On October 20, 2025, the debtor supplemented her motion with a letter from a physician's assistant who appears to work at Rising Remedies[7] – based on an email address included in the signature block. According to the letter, the debtor was experiencing fatigue, debilitating migraine headaches, severe panic attacks, and cognitive slowing. ECF No. 302 at 8. Neither the motion, the supplement, nor the letter address the length of the extension requested. Nor do any of these documents address the other pending litigation matters in which she is involved, what is transpiring in those cases, and how things are likely to change.

On November 3, 2025, the continued date of the hearing on the OSC and the motion to continue the deadlines, the debtor filed yet another motion to extend, stay, or continue the deadlines and hearing on the OSC. ECF No. 317.

On November 7, 2025, the District Court entered its order denying six outstanding motions filed by the debtor in the *Long Term* Case *after* that case was dismissed and closed. The motions sought to vacate the dismissal of that case, and to stay Long Term's post-foreclosure activities. *Hurst-Castl v. Long Term Capital P'ship VI, LLC*, 2025 WL 3127381 (D. Nev. Nov. 7, 2025). The District Court also struck additional supplemental pleadings filed by the debtor in violation of a local rule barring supplementation filed without leave of court. *Id.* at *1.

The BAP entered its decision on November 19, 2025, affirming the court's order granting Long Term's request for in rem relief from the automatic stay and its denial of the debtor's

---

[7] Ms. Hurst-Castl's monthly operating reports show that she received income for consulting work provided to Rising Remedies. *See* ECF Nos. 304 at 6; 235 at 6; 209 at 6.

requests for reconsideration of that order. *Hurst-Castl v. Long Term Capital P'ship VI, LLC (In re Hurst-Castl)*, 2025 WL 3235020 (B.A.P. 9th Cir. Nov. 19, 2025). Among other things, the BAP agreed that Long Term's loan "validity and transfers were finally determined by the Nevada state court…and could not be collaterally attacked by Ms. Hurst-Castl." *Id.* at *7. The BAP concluded that "Ms. Hurst-Castl's lengthy history of state court lawsuits and bankruptcy filings affecting the [White Fir property], and her long history of default without payment, sufficiently support the court's finding that Ms. Hurst-Castl filed this fifth bankruptcy petition as part of a scheme to delay, hinder, or defraud." *Id.* In its final footnote, the BAP acknowledged additional unauthorized pleadings were submitted by Ms. Hurst-Castl after oral argument on the appeal, which documents repeated arguments objecting to Long Term's standing, among others. *Id.* at *8, n.13. On November 28, 2025, the debtor filed her notice of appeal of the BAP's decision to the Ninth Circuit Court of Appeals.

Notwithstanding the District Court's November 7, 2025 order in *Long Term* denying the debtor's multiple post-dismissal motions seeking to vacate dismissal, on November 20, 2025, she filed another motion to alter or amend under Rule 59(e). *Long Term* Case ECF No. 92. On November 24, 2025, the District Court entered its minute order denying that motion, noting it was the debtor's "latest attempt to re-litigate issues already resolved by the Court." *Long Term* Case ECF No. 93. The District Court plainly stated that no further filings by Ms. Hurst-Castl would be considered in the *Long Term* Case and authorized the clerk of court to bar any future filings in the case. *Id.*

On December 1, 2025, the debtor filed her Notice of Appellate Divestiture and Related Proceedings in this bankruptcy case. ECF No. 319. In that document, she asserts that this court is divested of jurisdiction over any decision impacting Long Term's claim by the filing of her Ninth Circuit appeal of the BAP's November 19 decision affirming the court's grant of in rem stay relief. She also referenced a notice of appeal and an "Ex Parte Emergency Motion for Stay Pending Appeal" she purportedly filed with the Nevada Supreme Court regarding post-foreclosure proceedings involving the White Fir property.

On December 2, 2025, the District Court in the *Sables* case entered orders declaring Ms. Hurst-Castl to be a vexatious litigant and dismissing her claims with prejudice, including those challenging the validity of the nonjudicial foreclosure. *Sables* Case ECF Nos. 77 and 78. The District Court enjoined and prohibited Ms. Hurst-Castl "from commencing a new action with a case-initiation document (whether complaint, petition, or otherwise) in the United States District Court for the District of Nevada regarding the Property or Loan discussed in this order without first obtaining prefiling permission from the Chief Judge of this district." *Sables* Case ECF No. 77 at 13.

On December 5, 2025, the debtor filed her notice of appeal of the District Court's decision in the *Long Term* Case to the Ninth Circuit Court of Appeals.

On December 30, 2025, the debtor filed her notice of appeal of the District Court's decision in the *Sables* Case to the Ninth Circuit Court of Appeals.

## Discussion

Section 1112(b) provides that courts shall dismiss or convert a chapter 11 case where cause exists, absent unusual circumstances. "The bankruptcy court may sua sponte dismiss or convert a case under § 1112(b)." *In re NTI-NV, Inc.*, 2023 WL 4030563, at *4 (B.A.P. 9th Cir. June 15, 2023). Bankruptcy courts have "broad discretion in determining what constitutes 'cause' under section 1112(b). *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 614 (B.A.P. 9th Cir. 2014). Section 1112(b)(4) provides a non-exclusive list of statutory examples of cause requiring dismissal or conversion of a chapter 11 case. One such listed cause is the "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by the title or by order of the court." 11 U.S.C. § 1112(b)(4)(J). Additionally, it is well recognized that filing a bankruptcy petition in bad faith constitutes "cause" for dismissal or conversion under § 1112(b). *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994). Cause for dismissal or conversion under § 1112(b) for bad faith is not limited to the filing of the bankruptcy case. Rather, "good faith is required in the commencement and prosecution of a chapter 11 case."

22

*Sullivan*, 522 B.R. at 614; § 1129(a)(3). Therefore, a lack of good faith in the prosecution of a chapter 11 case also constitutes cause under § 1112(b)(1). *Id.*

### A. The debtor's latest request for additional time shall be denied.

The court extended the time for Ms. Hurst-Castl to file her disclosure statement and plan. When she failed to do so, the court provided her additional time before hearing her second motion to extend together with its OSC to dismiss the case for bad faith. The day before the hearing on her second motion to continue the deadline, she filed a disclosure statement and plan. At the hearing on her pending request for additional time as well as the OSC, the court noted the deficiencies in the documents but granted Ms. Hurst-Castl a final opportunity to present an amended disclosure statement that facially contained adequate information as required by § 1125 and a viable plan of reorganization. The court also imposed subsequent deadlines for approval of the disclosure statement and confirmation of a plan. Rather than file the amended documents, she has filed additional challenges to the Wildeveld and Long Term claims and filed various motions to either vacate or continue deadlines or continue the OSC hearing.

Ms. Hurst-Castl's latest request for a continuance, as clarified at the November 3, 2025, hearing, seeks an indeterminate extension of time to prepare the amended documents while she continues her litigation and appeals. She requests the continuance due to her medical condition, which she describes as "unexpected medical symptoms connected to prior cranial surgeries and the extraordinary burden of simultaneously defending multiple active matters in Bankruptcy Court, Federal District Court, Nevada District Court, Justice Court, and two pending appeals before the Bankruptcy Appellate Panel…." ECF No. 301 at 13. Ms. Hurst-Castl has consistently raised her medical condition in support of repeated requests for continuances in this bankruptcy, the 2023 bankruptcy and other litigation including the District Court cases and the Wildeveld litigation. She now states that the stress of proceeding with these multiple cases has worsened her condition.

The court is sympathetic to Ms. Hurst Castl's situation. Indeed, it has been a factor in the extensions this court has provided to her, and the leniency in enforcing the deadlines concerning

the disclosure statement and plan. However, debtors in chapter 11 must proceed toward reorganization; they "cannot wallow in chapter 11 indefinitely." *In re Lashley*, 664 B.R. 408, 416 (Bankr. W.D. Ky. 2024) (citing *Alershire v. Wells Fargo Bank, N.A.*, 589 B.R. 154, 162 (N.D. Ill. 2018)). The court made it clear to Ms. Hurst-Castl when extending the time for her to file an amended disclosure statement and plan that this was her "last chance" opportunity or the court would dismiss or convert her bankruptcy case. The court's order continuing the hearing on the OSC was unequivocal:

> The debtor's failure to file an amended disclosure statement containing adequate information as that term is defined under 11 U.S.C. § 1125(a)(1) and an amended chapter 11 plan which conforms to the requirements of 11 U.S.C. § 1123 and is confirmable under 11 U.S.C. § 1129 will result in the dismissal of the debtor's case under 11 U.S.C. § 1112(b)(4)(J) for failure to file an appropriate disclosure statement or confirmable plan and/or bad faith as discussed in the court's OSC, without further notice or hearing.

ECF No. 281 at 2.

The debtor argues that her medical condition necessitates an *indefinite* continuance of her reorganization efforts. Yet, the day before the September 12, 2025, hearing resulting in the order setting the deadline for her amended disclosure statement and plan, Ms. Hurst-Castl filed four substantive motions and two declarations in support. After entry of the court's scheduling order she has filed, in the bankruptcy court alone: a reply on her objection to Deutsche Bank's secured claim against her residence; a motion to vacate the scheduling order; an emergency motion to stay the deadlines to file amended documents as well as a separate motion to extend that time; motions to vacate and an objection to a request for judicial notice on the current objection to the Wildeveld claim; a reply on the current objection to the Wildeveld claim; an ex parte status report and motion for continuance on the pending matters; and a notice of divestiture. This activity makes clear that despite her medical condition she is capable and intent on continuing to challenge Wildeveld's and Long Term's claims, while not paying her creditors.

Instead of attempting to propose a viable disclosure statement and plan, Ms. Hurst-Castl chooses to continue her litigation. Her current request for an indefinite extension of time

similarly demonstrates that she seeks the benefit of the automatic stay without attempting to reorganize. While sympathetic to Ms. Hurst-Castl's stated medical condition, the court was clear that it was providing a last chance for her to demonstrate a good faith effort to reorganize or the case would be dismissed. Having chosen not to amend her disclosure statement and plan within that stated time, no further continuance is warranted. The court denies all requests to continue the time to file an amended disclosure statement and plan.

**B. The debtor's failure to file a viable disclosure statement and plan.**

Section 1112(b)(4)(J) provides that the failure to file a disclosure statement and file or confirm a plan within the time ordered by the court constitutes cause for dismissal or conversion of a chapter 11 case. Ms. Hurst-Castl ultimately filed a "preliminary" disclosure statement and plan. A plan filed on a conditional basis is unconfirmable. *In re Made in Detroit, Inc.*, 299 B.R. 170, 176 (Bankr. E.D. Mich. 2003), *aff'd*, 414 F.3d 576 (6th Cir. 2005). Courts are clear that a debtor must file a *viable* disclosure statement and plan within the time set by a statutory deadline or order of the bankruptcy court. The filing of an incomplete or deficient disclosure statement or plan does not remove a debtor from the reach of § 1112(b)(4)(J). *Toibb v. Radloff*, 501 U.S. 157, 165 (1991) ("[T]he Code gives bankruptcy courts substantial discretion to dismiss a Chapter 11 case in which the debtor files an untenable plan of reorganization."); *Lashley*, 664 B.R. at 416 ("Courts have explained that cause[] exists under § 1112(b)(4)(J) where the debtor's plan is materially incomplete or otherwise insufficient."); *In re No Rust Rebar, Inc.,* 641 B.R. 412, 425 (Bankr. S.D. Fla. 2022); *In re Babayoff,* 445 B.R. 64, 78 (Bankr. E.D.N.Y. 2011) (cause under § 1112(b)(4)(J) may exist "where the debtor's plan is incomplete in material respects, or no more than an outline.").

The bankruptcy court in *Lashley* considered whether cause existed under § 1112(b)(4)(J) to dismiss or convert a subchapter V debtor that had been in bankruptcy for ten months. The debtor had obtained two extensions of time and filed his plan, which drew objections. The court found that the debtor had not made progress towards proposing a confirmable plan, in large part because he failed to include a liquidation analysis or financial projections as required under

§ 1190 for subchapter V debtors. *Lashley*, 664 B.R. at 416. The court found that cause existed for dismissal because the filed plan was materially incomplete and insufficient. *Id*. The court is aware that this is not a subchapter V case like *Lashley,* but Ms. Hurst-Castl has had ample time over the course of her 2023 bankruptcy and her current case to seek confirmation of a viable plan. Yet, she has only filed a skeletal plan and disclosure statement that are incomplete and entirely insufficient, warranting dismissal or conversion under § 1112(b)(4)(J).

### 1. The Disclosure Statement

Section 1125(a)(1) requires chapter 11 debtors to file a disclosure statement providing adequate information to creditors and interest holders in order for them to make an "informed judgment about the plan." The statute defines adequate information to mean "information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor of the relevant class to make an informed judgment about the plan...." § 1125(a)(1). Ultimately, "the determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court." *In re Islet Sciences, Inc.,* 640 B.R. 425, 460 (Bankr. D. Nev. 2022) (quoting *Computer Task Grp., Inc. v. Brotby (In re Brotby),* 303 B.R. 177, 193 (B.A.P. 9th Cir. 2003)). Reviewing the adequacy of a disclosure statement, the Hon. Mike Nakagawa observed that numerous factors have been used, "including the present condition of the debtor while in Chapter 11, the classes and claims within the reorganization plan, the estimated administrative expenses (including attorneys' fees), financial information and projections relevant to the decision to accept or reject the debtor's plan, and information relevant to the risks posed to creditors under the debtor's plan." *Id.* (citing 7 COLLIER ON BANKRUPTCY & 1125.02[2] (Richard Levin & Henry J. Sommer eds 16th ed. 2021)). "[A]t an 'irreducible minimum,' a disclosure statement must provide information about the plan and how its provisions will be effected." *2010-1 CRE Venture, LLC v. VDG Chicken, LLC (In re VDG Chicken, LLC)*, 2011 WL 3299089, at *4

(B.A.P. 9th Cir. Apr. 11, 2011) (citing *Official Committee of Unsecured Creditors v. Michelson (In re Michelson),* 141 B.R. 715, 718–19 (Bankr. E.D. Cal. 1992)).

Ms. Hurst-Castl describes her disclosure statement as preliminary and necessarily incomplete. ECF No. 244 at 1. It makes a vague reference to classes of creditors but fails to provide any other relevant information about her current financial condition, the available income to support any reorganization plan, the current status of claims asserted against her, and the status of her current challenges to the Wildeveld and Long Term claims, among others. There is nothing specific as to the payment of any creditor. She states that priority debt will be paid within the time allowed but fails to state when such payments would begin or on what schedule. For example, the IRS has filed a priority claim for taxes in the amount of $68,030.07. Ms. Hurst-Castl has not filed any objection to the claim to date. She has stated at various hearings that she is negotiating with the IRS, but there is no mention or discussion of the priority claim in the disclosure statement or what effect it might have on distributions.

The disclosure statement also ignores the reality of the nonjudicial foreclosure of Ms. Hurst-Castl's interest in the White Fir property. The disclosure statement asserts that the foreclosed property remains her property without any recognition of the foreclosure or the adverse decisions in District Court cases, including the denial of injunctive relief to stop the foreclosure or enjoin the post-foreclosure activities.

Similarly, Ms. Hurst-Castl does not mention the default judgment entered against her by the state court in the Wildeveld case or that she has appealed that judgment to the Nevada Supreme Court.

Significantly, the disclosure statement is devoid of any information or discussion of Ms. Hurst-Castl's finances or income available to fund plan distributions. This is the core of any disclosure statement, essential to permitting creditors to evaluate the proposed plan treatment and assess the plan's feasibility. *See In re Arnold*, 471 B.R. 578, 586 (Bankr. C.D. Cal. 2012) (finding a disclosure statement lacked adequate information where it contained no information to support a feasibility determination). Yet, neither the disclosure statement, nor the plan, detail any

27

plan treatment other than continued litigation. In short, Ms. Hurst-Castl fails to provide *any* financial information. The bankruptcy court raised its concerns as to the debtor's finances in its OSC in relation to the question of bad faith:

> The court's bad faith concerns are exacerbated by the debtor's finances. The debtor has consistently filed her monthly operating reports. Over the past nine months (ending May 2025), the debtor has disclosed an average of $9,643.96 in monthly cash receipts, primarily from "rent." No further detail is provided, but the court assumes these receipts involve rental of the White Fir property. Given Long Term's foreclosure of that property it is unclear how the debtor can continue to generate further rental revenue.

ECF No. 197 at 8.

The OSC proceeded to point out that the monthly operating reports also disclosed monthly expenses that resulted in an average net monthly income of only $57.52. *Id.* at 8-9. This amount was grossly insufficient to pay the stated priority debt evidenced by the current proofs of claim filed against the debtor. *Id.* at 9. The disclosure statement fails to address this fundamental concern as to the feasibility of any plan. At the hearing on the OSC, Ms. Hurst-Castl stated that she does not depend on the White Fir property for her rental income. Yet, she fails to break down the rental income in her monthly operating reports and has failed to discuss her income at all in the disclosure statement. This continuing fundamental deficiency alone constitutes cause to dismiss or convert the case.

Additionally, Ms. Hurst-Castl has not discussed, or provided, her liquidation analysis as required by § 1129(a)(7)(A)(ii) and the best interest of creditors test.

For these reasons, the court finds Ms. Hurst-Castl's "preliminary" disclosure statement filed on August 27, 2025, is deficient and fails to provide adequate information as required by § 1125(a).

### 2. The Plan of Reorganization

The debtor's plan is similarly deficient. It fails to actually commit the debtor to do anything other than continue her litigation. Absent from the plan is any schedule of payments or term for the plan. Ms. Hurst-Castl proposes not to pay secured creditors, among which she

includes Long Term, "until final adjudication. If allowed, Debtor proposes to restructure over [the] plan term under § 1129(b)(2)(A)." ECF No. 245 at 2. Similarly, Ms. Hurst-Castl merely states: "Allowed unsecured claims will share pro rata distributions from disposable income after Classes 1 [secured creditors] and 2 [priority creditors] are paid. Disputed or unliquidated claims will receive no distribution until allowed by final order." *Id.* at 3. In short, the proposed plan commits Ms. Hurst-Castl to pay nothing to her creditors at any specific time.

Ms. Hurst-Castl's focus on continued litigation against creditors raises substantial questions as to whether she has proposed this skeletal plan in good faith as required by § 1129(a)(3). Ms. Hurst-Castl fails to recognize her current financial situation and the current reality of what she owes Wildeveld under the default judgment.

Like the disclosure statement, her plan fails to acknowledge Long Term's foreclosure of the White Fir property and its substantial unsecured deficiency claim against her. As noted previously, Ms. Hurst-Castl continues to challenge Long Term's claim on the grounds that it is not entitled to enforce the note or deed of trust and the sufficiency of the nonjudicial foreclosure under Nevada law. However, the bankruptcy court's order denying her objection to Long Term's claim is final and was never appealed. The court has overruled her "renewed objection" on essentially the same grounds raised in her original objection.[8] Ms. Hurst-Castl was required at the *very* least to recognize in the plan the possibility that Long Term's claim is valid, as is the foreclosure, in light of the court's final decision allowing Long Term's claim.

Further, the proposed means of funding what plan payments might be made are, at best, in serious doubt. "[A] plan cannot be based on 'visionary promises;' it must be doable." *Made in Detroit*, 299 B.R. at 176; *Pizza of Hawaii, Inc. v. Shakey's, Inc. (Matter of Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985). Ms. Hurst-Castl proposes to fund her plan with her disposable income. As mentioned above, even including the White Fir rental income, the debtor's monthly net income is de minimis:

---

[8] Ms. Hurst-Castl's latest motion challenging Long Term's claim as a motion to vacate on essentially the same substantive grounds as those raised in her claim objections has not been heard pending resolution of Ms. Hurst-Castl's latest motion to continue and the court's OSC.

> [T]he debtor's average monthly expenses, as disclosed in the monthly operating reports, total $9,586.45. This equates to an average monthly net income of $57.52 to pay her plan obligations. Unfortunately, the debtor owes priority debts to the Internal Revenue Service and Nevada Department of Taxation totaling $78,165.01. Priority debt must be paid in full over five years, with interest. 11 U.S.C. § 1129(a)(9)(C). This alone would require the debtor to make monthly priority payments of $1,302.75, without calculating interest. Even ignoring the foreclosure of the White Fir property, if the debtor's income and expenses remain the same as that reported over the past nine months it appears that the debtor lacks the ability to fund a viable plan.

ECF No. 197 at 8-9. Ms. Hurst-Castl has never addressed these issues.

Ms. Hurst-Castl further proposes that she will fund her plan with recoveries from claim objections. Ten proofs of claim have been filed in Ms. Hurst-Castl's bankruptcy case, three of which are claims under $700 filed by the UST. The debtor's objections to Long Term's and Wildeveld's claims have been unsuccessful. Her objection to the claim of secured lender Deutsche Bank National Trust Company was consensually resolved and withdrawn. ECF No. 291. Only the debtor's objection to the late-filed claim of the Clark County Treasurer was sustained, and that objection was sustained only to the extent Clark County may have been entitled to a distribution under any confirmed plan; the validity of the claim was not adjudicated. ECF No. 295. Accordingly, Ms. Hurst-Castl's claim objections are not a viable source of funding for her plan.

The court's good faith concerns are exacerbated by Ms. Hurst-Castl's third and fourth proposed plan funding sources: litigation recoveries and real property liquidation or refinancing. The plan generically lists these as sources of funding. Neither the plan, nor the disclosure statement, provides any information to suggest that these are viable sources of funding. Indeed, Ms. Hurst-Castl currently owns only her residence. There has been no discussion as to the value of that property or any refinancing or sale. And even if the court were to ignore the fact that the White Fir property has been foreclosed, it has held that Long Term holds a valid secured claim. The debtor conceded in her prior bankruptcy that the secured debt was substantially undersecured, meaning that the White Fir property cannot be a source of funding through either sale or refinance. These sources are too speculative to support confirmation of the debtor's plan.

30

*In re Trans Max Techs., Inc.*, 349 B.R. 80, 93 (Bankr. D. Nev. 2006) (quoting *Crestar Bank v. Walker (In re Walker),* 165 B.R. 994, 1003 (E.D. Va. 1994)) ("'[t]he debtor must offer more than speculation about the source of funding for the plan.'").

Finally, the proposed plan permits the debtor to retain all of her property –including the White Fir property - without addressing the absolute priority rule imposed in § 1129(b)(2)(B) and in § 1129(b)'s "fair and equitable" requirement.

### 3. Cause exists under § 1112(b)(4)(J).

For the reasons set forth above, the court holds that Ms. Hurst-Castl has failed to file an adequate disclosure statement or a confirmable plan of reorganization within the time set by the court and extended for the filing of amended documents. The court further finds that Ms. Hurst-Castl has been given a reasonable amount of time to submit an acceptable disclosure statement and viable plan of reorganization, and was informed of the need to amend those documents by October 14, 2025. As of the date of this decision, she has failed to file an amended disclosure statement and plan. Other courts have dismissed a chapter 11 bankruptcy in similar timeframes without confirmation of a plan even if the court looks only at the current case and ignores the 2023 bankruptcy. *Lashley*, 664 B.R. at 412 (dismissal under § 1112(b)(4)(J) required where "ten months has passed in this case and the Debtor has not made progress in proposing a confirmable plan."); *In re Golden Park Ests., LLC*, 2015 WL 3643479, at *5 (Bankr. D.N.M. June 11, 2015) ("Debtor has been in Chapter 11 for nearly 11 months. No progress toward reorganization has been made during that time. There is no reason to believe the Debtor could reorganize given more time."); *In re Lamar Estates, Inc.,* 6 B.R. 933 (Bankr. E.D.N.Y. 1980) (eight months). Accordingly, the court concludes that cause exists under § 1112(b)(4)(J) to convert or dismiss the debtor's bankruptcy case.

### C. Bad Faith

A court's analysis of whether a chapter 11 case should be dismissed for lack of good faith focuses on whether a debtor is attempting "to effect a speedy, efficient reorganization on a feasible basis" or "to unreasonably deter and harass creditors." *Marsch,* 36 F.3d at 828. A

petition may be filed in bad faith if a debtor seeks to achieve objectives outside the legitimate scope of the bankruptcy laws or if it is an apparent two-party dispute that can be resolved outside of bankruptcy court. *Id.*; *Sullivan*, 522 B.R. at 616.

"Bad faith depends on an amalgam of factors and no specific factor is determinative." *Legal Svc. Bureau, Inc. v. Orange Cnty Bail Bonds, Inc. (In re Orange Cnty Bail Bonds, Inc.)*, 638 B.R. 137, 149 (B.A.P. 9th Cir. 2022) (citing *Idaho Dep't of Lands v. Arnold (In re Arnold)*, 806 F.2d 937, 939 (9th Cir. 1986)). Courts in the Ninth Circuit have considered a series of non-exclusive factors in evaluating whether a chapter 11 case was filed in bad faith, including whether the case is essentially a two party dispute capable of state court resolution, and whether the debtor has sufficient income to fund a chapter 11 plan and make adequate protection payments. *See In re Windscheffel*, 2017 WL 1371294, at *4 (B.A.P. 9th Cir. Apr. 3, 2017) (quoting *St. Paul Self Storage Ltd. P'ship v. Port of Authority of the City of St. Paul (In re St. Paul Self Storage Ltd. P'ship)*, 185 B.R. 580, 582-83 (B.A.P. 9th Cir. 1995)); *Stolrow v. Stolrow's, Inc. (In re Stolrow's Inc.)*, 84 B.R. 167, 171 (B.A.P. 9th Cir. 1988). Bad faith is, however, determined on a case-by-case basis, and there are no essential factors that must be satisfied for a finding of bad faith. *Orange Cnty Bail Bonds*, 638 B.R. at 149 (citing *Can-Alta Props., Ltd v. State Sav. Mortg. Co. (In re Can-Alta Props., Ltd.)*, 87 B.R. 89, 91 (9th Cir. 1988); *Meadowbrook Invs.' Grp. v. Thirtieth Place, Inc. (In re Thirtieth Place, Inc.)*, 30 B.R. 503, 506 (B.A.P. 9th Cir. 1983)); *see also In re Prometheus Health Imaging, Inc.*, 705 Fed.App'x. 626, 627 (9th Cir. 2017) (quoting *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1048 (9th Cir. 2013)) ("'[C]ourts may consider any factors which evidence an intent to abuse the judicial process and the purposes of the reorganization provisions.'").

A chapter 11 petition is filed in bad faith where it is filed merely as a litigation tactic by a debtor seeking a more favorable forum. *St. Paul Self Storage*, 185 B.R. at 583 [citing cases] ("The timing of the petition and the unsuccessful progress of the…litigation strongly suggests Debtor's intent to use the bankruptcy code as a means to escape to a forum which it perceived to be more friendly."). In *Prometheus*, the Ninth Circuit affirmed the dismissal of the debtor's

32

chapter 11 bankruptcy case on bad faith grounds where the debtor demonstrated a "lack of cash flow [and] sources of income to sustain a plan of reorganization" and a lack of "significant assets," among other things, making it "clear Prometheus filed its Chapter 11 petition in bad faith as a litigation tactic, rather than as a method for reorganizing its business." *Prometheus*, 705 Fed. App'x. at 628 (quotations omitted) (cleaned up). Additionally, where a party has intentionally delayed resolution of an underlying state court case from the very beginning, implementing bankruptcy filings to further the delays "is unreasonable and unjustifiable." *Castle Rock Holdings, LLC v. Indelicato*, 2020 WL 1853314, at *2 (D. Nev. Apr. 13, 2020). Filing a bankruptcy case just before trial commences in a state court action implies a delay tactic. *Bayati v. Musharbash (In re Bayati)*, 2015 WL 6470522, at *5 (B.A.P. 9th Cir. Oct. 26, 2015).

The debtor has been in this current chapter 11 for well over a year. In that time, she has taken numerous and repeated opportunities to litigate her claims against Long Term and Wildeveld in this and other courts. This court has directly ruled on Ms. Hurst-Castl's objections to Long Term's secured claim, which necessarily included the promissory note giving rise to the underlying debt – which she has not paid since 2008. Similarly, that decision necessarily addressed Long Term's rights under its assigned deed of trust encumbering the White Fir property. The court found that Long Term held Ms. Hurst-Castl's promissory note, which had been endorsed in blank so that the party holding the note was entitled to collect the monies due and enforce the terms of the note on a default.[9] Moreover, the court traced the recorded

---

[9] As the BAP explained in *Green v. Waterfall Victoria Master Fund 2008-1 Grantor Trust Series A (In re Green)*, 2012 WL 4857552, at *6 (B.A.P. 9th Cir. Oct. 15, 2012):

> We have plowed this same ground several times recently, most notably in two published decisions, [*Allen v. U.S. Bank, N.A. (In re Allen)*, 472 B.R. 559 (B.A.P. 9th Cir. 2012)] and [*Veal v. Am. Home Mortg. Serv., Inc. (In re Veal)*, 450 B.R. 897 (B.A.P. 9th Cir. 2011)]. In those two decisions, we generally held that a party has standing to file a proof of claim based on a promissory note secured by real property if that party is a "person entitled to enforce" the note under § 3–301 of the Uniform Commercial Code ("UCC"). *In re Allen*, 472 B.R. at 565; *In re Veal*, 450 B.R. at 902. In relevant part, a party is a person entitled to enforce the note if it is a "holder" of the note, as defined in UCC § 1–201(b)(21)(A). *In re Allen*, 472 B.R. at 565; *In re Veal*, 450 B.R. at 910–11. Under UCC § 1–201(b)(21)(A), a "holder" includes a "person in possession of a negotiable

33

assignments of Washington Mutual's recorded deed of trust through to Long Term as well, establishing its rights as a creditor of Ms. Hurst-Castl with an enforceable lien against the White Fir property.

Importantly, Ms. Hurst-Castl did not appeal the court's denial of her objection to Long Term's claim. The denial of her claim objection was a final order subject to appeal. *Poonja v. Alleghany Props. (In re Los Gatos Lodge, Inc.)*, 278 F.3d 890, 894 (9th Cir. 2002) ("[T]he bankruptcy court's allowance or disallowance of a proof of claim is a final judgment."); *see also Prestige Ltd. P'ship-Concord v. E. Bay Car Wash Partners (In re Prestige Ltd. P'ship-Concord)*, 234 F.3d 1108, 1113-14 (9th Cir. 2000); *Willingham v. Willingham (In re Willingham)*, 2024 WL 1299106, at *8 (B.A.P. 9th Cir. Mar. 27, 2024). The time for appeal has long expired and the court's order is final. Fed. R. Bankr. P. 8002(a). As such, the court's denial of Ms. Hurst-Castl's claim objection is entitled to preclusive effect and cannot be collaterally attacked. *Wells v. Deutsche Bank Nat'l Trust Co. (In re Wells)*, 2013 WL 3770810, at *8 (B.A.P. 9th Cir. July 10, 2013); *see also Albert-Sheridan v. Golden (In re Albert-Sheridan)*, 2019 WL 7372667, at *6 (B.A.P. 9th Cir. Dec. 18, 2019), *aff'd sub nom. Albert v. Golden (In re Albert)*, 998 F.3d 1088 (9th Cir. 2021) ("[P]rinciples of preclusion apply to prevent relitigation of the same exemption issues (issue preclusion) as well as those that could have been litigated as to the exemptions at issue (claim preclusion)."); *Law v. Li (In re Law)*, 2007 WL 7540994, at *2 (B.A.P. 9th Cir. July 10, 2007), *aff'd,* 308 Fed. App'x. 153 (9th Cir. 2009) ("The court did not err in concluding that the res judicata rules of claim and issue preclusion operated to preclude re-litigation of the debtor's claim objection.").

---

instrument[8] that is payable ... to bearer...." In turn, a negotiable instrument is payable to the bearer when it is indorsed in blank. *See* UCC § 3–205(b) ("If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."); *see also In re Allen,* 472 B.R. at 567.

Recognizing Ms. Hurst-Castl was proceeding without counsel, the court advised her of this when denying her Motion to Renew Claim Objection, which was simply a second effort to object to Long Term's claim filed after the nonjudicial foreclosure. A review of the docket and pleadings filed in the *Long Term* Case show that Ms. Hurst-Castl raised the same arguments challenging Long Term's claim in District Court that have been presented, and rejected, by the bankruptcy court. In this bankruptcy she has continued her efforts to litigate the same issues by filing her Motion to Compel (ECF No. 203); the Motion for Relief from Judgment Pursuant to Rule 60(b) (ECF No. 269); Motion to Amend Order Denying Motion to Compel (ECF No. 271); Objection to Amended Proof of Claim No. 8-2 (ECF No. 273); and the Motion to Vacate and Strike September 15, 2025 Scheduling Order as Void for Lack of Jurisdiction, Violation of 11 U.S.C. § 1125 and Abuse of Discretion (ECF No. 288). While presented in various forms – "renewed motion," Rule 60(b) motion, and "motion to vacate" - each filing challenges the court's prior denial of Ms. Hurst-Castl's objection to Long Term's claim based largely on the same arguments the court rejected in its oral ruling. To the extent that the debtor has raised new arguments as to the underlying claim and deed of trust, it is clear that she could have raised such arguments in her claim objection. She offered no viable explanation as to why she could not have previously obtained her current "new" evidence but only states that she did not have such evidence at the time of her motion.[10] These latest matters remain pending. The court need not decide them in light of the procedural posture of the bankruptcy and the failure to file her amended disclosure statement and plan. The debtor's continued and repeated efforts to relitigate Long Term's claim, both in this court and the District Court, strongly evidence Ms. Hurst-Castl's singular desire and intent to litigate rather than reorganize.

The above chronology of events relating to the Wildeveld claim further confirms that Ms. Hurst-Castl has no intent to present a viable plan of reorganization. She filed a claim objection and adversary case to litigate Wildeveld's claims in her 2023 bankruptcy. After dismissal of that

---

[10] While Ms. Hurst-Castl is not generally precluded from challenging the amount of Long Term's post-foreclosure amended deficiency claim, she nonetheless seeks to relitigate the underlying obligation itself in contravention of the court's decision.

bankruptcy, the state court rescheduled trial of Wildeveld's claims for September 3, 2024. Trial was stayed by Ms. Hurst-Castl's current bankruptcy, filed on September 3, 2024. After the bankruptcy court declined to extend the automatic stay to the Wildeveld litigation, the state court again set the case for trial. Trial was continued several times at Ms. Hurst-Castl's request. Ms. Hurst-Castl appeared for the first day of trial on April 30, 2025, with her counsel, only to have counsel request to withdraw. Ms. Hurst-Castl elected to allow counsel to withdraw knowing that her case would still proceed to trial that day. She then refused to participate in the trial. Wildeveld presented evidence and the court entered its default judgment against Ms. Hurst-Castl. Undeterred, she promptly objected to Wildeveld's claim in bankruptcy despite entry of judgment based on her refusal to participate in the continued trial after permitting her counsel to withdraw. Though the court has ruled that her objection will be held in abeyance pending the finality of the state court case, Ms. Hurst-Castl has again filed another objection to the amended claim stating the same arguments. Her actions evidence her determination to litigate in any available forum and with disregard for any adverse decision.

Ms. Hurst-Castl's refusal to acknowledge the foreclosure of the White Fir property in her chapter 11 plan and disclosure statement bolsters this court's conclusion regarding her bad faith. Like the debtor in *Prometheus*, post-foreclosure Ms. Hurst-Castl appears to lack significant assets or adequate monthly income to fund payments to her creditors. Rather than address these circumstances in her plan and disclosure statement, she instead misrepresented that the White Fir property remains property of her estate and remains a source of monthly rental income.

Finally, Ms. Hurst-Castl argues that she has filed and prosecuted her bankruptcy in good faith because she has filed her monthly operating reports and paid ongoing fees to the United States Trustee (UST). A debtor's compliance with chapter 11 requirements, such as the filing of monthly operating reports and payment of UST fees, does not preclude dismissal on bad faith grounds. *St. Paul*, 185 B.R. at 583. As the BAP noted in *Windscheffel*, 2017 WL 1371294 at *5: "If a debtor's timely filing of operating reports, compliance with various reporting requirements, and work toward reorganization rebutted a finding of bad faith, then every debtor who complied

36

with the bare minimum of procedural requirements would be immunized from a bad faith finding."

The court has been hesitant to dismiss this bankruptcy as the foreclosure of the White Fir property and liquidation of the Wildeveld claim presented an opportunity for the debtor to reorganize her finances. She refuses to do so. Instead, she continues to litigate rather than reorganize. It is clear that the debtor seeks "to unreasonably deter and harass creditors" to "achieve objectives outside the legitimate scope of the bankruptcy laws." *Marshall*, 721 F.3d at 1047; *Marsch*, 36 F.3d at 828. This is an abuse of process that warrants dismissal. *Arnold*, 806 F.2d at 939 ("Good faith is lacking only when the debtor's actions are a clear abuse of the bankruptcy process."); *Sullivan*, 522 B.R. at 617. For these reasons, the court finds that the debtor filed and has maintained this bankruptcy in bad faith.

### D.  Dismissal or Conversion

Once cause is established under § 1112(b), the court must consider whether to convert or dismiss the case, or appoint a trustee, whichever is in the best interests of the creditors and the estate. § 1112(b)(1), (b)(2). Like the determination of cause, this is decided on a case-by-case basis and is within the court's sound discretion. *In re Staff Inv. Co.*, 146 B.R. 256, 260 (Bankr. E.D. Cal. 1992). Finally, the court must identify whether there are unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate. *Sullivan*, 522 B.R. at 612. "A determination of unusual circumstances is fact intensive and contemplates facts that are not common to chapter 11 cases." *In re McKay*, 2013 WL 66263, at *2 (Bankr. D. Idaho Jan. 4, 2013) (quoting *In re Hosp. de Damas, Inc.*, 2012 WL 1190651, *3 (Bankr. D. P.R. Apr. 9, 2012)).

The court has determined that cause exists under § 1112(b) for both the failure to file an adequate disclosure statement and confirmable plan as well as filing and maintaining the bankruptcy in bad faith. It must now decide whether dismissal or conversion is in the best interests of the estate and Ms. Hurst-Castl's creditors. As to her creditors, "[t]here is no specific numerosity requirement inherent in [the] section 1112(b) best interest test. The interest of a

single creditor with a large enough claim will suffice." *Staff Inv. Co.*, 146 B.R. at 261. Ms. Hurst-Castl is current on payments to the secured creditor holding a lien against her residence and has resolved her disputes as to that creditor's claim. She tells the court that she is also negotiating with the IRS regarding its claim. The automatic stay was not extended as to Wildeveld, and the appeal of the state court's default judgment is ongoing. Finally, Long Term has obtained in rem stay relief, and will not be impacted by either conversion or dismissal, even if the debtor re-files. In short, the bulk of the debtor's creditors do not stand to benefit from conversion of her case to chapter 7.

As for the benefit to the estate, this element "focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy." *Staff Inv. Co.*, 146 B.R. at 261. For example, a chapter 7 trustee's avoidance powers could result in recovery of transferred assets which could not be recovered outside of bankruptcy. The court is aware of no benefit to the estate that weighs in favor of conversion over dismissal. Long Term has foreclosed on the White Fir property; Ms. Hurst-Castl is current on payments on her residence; and no party alleges pre-petition transfers exist which could be avoided for the benefit of the estate.

The court also does not find it appropriate to appoint a chapter 11 trustee to shepherd Ms. Hurst-Castl's bankruptcy case to completion. The White Fir property has been foreclosed. Ms. Hurst-Castl's income appears insufficient to fund plan payments or administrative expenses. There is no business to reorganize. Appointment of a chapter 11 trustee appears to be of no benefit to the estate or the debtor's creditors.

Finally, the court must examine whether unusual circumstances exist which weigh against dismissal of Ms. Hurst-Castl's case. She urges the court to indefinitely delay her obligation to file a confirmable chapter 11 plan in light of her ongoing litigation outside of bankruptcy and her objections to the Long Term and Wildeveld claims. Neither pending litigation nor undecided claim objections constitute unusual circumstances weighing against conversion or dismissal in an individual chapter 11 case. *Green v. Howard Family Trust Dated August 21, 1998 (In re Green)*, 2016 WL 6699311, at *11 (B.A.P. 9th Cir. Nov. 9, 2016). Nor

38

does a debtor's pro se status. *In re Ghaffari*, 2025 WL 869518, at * 10 (Bankr. D N.M. Mar. 19, 2025) (quoting *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008)). As for Ms. Hurst-Castl's cognitive impairment, certainly her disability is not one commonly found in the average individual chapter 11 bankruptcy case. Yet, she has clearly demonstrated the ability to file and prosecute multiple cases and appeals. She frequently alleges that her difficulties are attributable at least in part to the sheer volume of these proceedings. Dismissal of this bankruptcy case will alleviate some of that stress and should enable her to better focus on her other litigation – which should proceed unaffected by dismissal of the bankruptcy. Accordingly, this circumstance further weighs in favor of, not against, dismissal.

## <u>Conclusion</u>

Therefore, for the reasons stated herein, the court will enter orders denying Ms. Hurst-Castl's request for an extension of time to file an amended plan and disclosure statement, and dismissing this case under § 1112(b)(4)(J) and for bad faith.

\* \* \* \* \*

Copy sent to all parties and/or their counsel via CM/ECF Electronic Notice.

Copy sent via BNC notice to:
TRACY LEE HURST-CASTL
8616 MIRADA DEL SOL DRIVE
LAS VEGAS, NV 89128

# # #